# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs February 2, 2010

## STATE OF TENNESSEE v. LAWRENCE HAILEY

### Direct Appeal from the Criminal Court for Shelby County
#### No. 07-06055     Chris B. Craft, Judge

### No. W2009-00759-CCA-R3-CD  - Filed May 24, 2010

Defendant-Appellant, Lawrence Hailey, was convicted by a Shelby County jury of one count of robbery, a Class C felony.  He was sentenced as a Range II, multiple offender to serve nine years and six months in the Tennessee Department of Correction.  In this appeal, Hailey argues:  (1) the evidence is insufficient to support his conviction, and (2) his sentence is excessive.  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JERRY L. SMITH and J. C. MCLIN, JJ., joined.

Robert W. Jones, District Public Defender; Barry W. Kuhn, Assistant Public Defender, Memphis, Tennessee for the Defendant-Appellant, Lawrence Hailey.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; William L. Gibbons, District Attorney General; and Chris West, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**Facts.**  This case involves the robbery of a victim at a gas station in Memphis, Tennessee.  Because Hailey challenges the sufficiency of the convicting evidence, a review of relevant trial testimony is necessary.

Nancy Holmes, the victim, testified that she was at a gas station on Third Street and Holmes Road on October 20, 2006, at approximately 5:30 to 6:00 p.m.  She went inside the gas station to purchase gas and to buy some chicken.  When she returned to put the gas in her car, she noticed a man sitting in a truck at the next pump.  At the time, she  believed that the man in the truck was waiting for someone to pay for gas.  Holmes began pumping her gas

with her right hand and had her purse on her left shoulder.  She described what happened next:

> For a quick second, I turned to put the [gas] nozzle in my car and I'm just feeling my body being jerked and I'm feeling myself go down but I don't actually remember falling to the ground.  I just remember being jerked.  And when I end up I was over there at his truck.  He had jumped back in [his truck] but somehow or another he was still holding on to my purse strap.  And by it being wrapped around my arm, I was still, you know, hanging on to it.

The victim said that the man grabbed her purse and dragged her backwards.  At the time, she thought, "I don't know what's going on but I'm not letting go of this purse."  She explained that a year ago someone had stolen her purse out of her van and had "r[u]n up all kind of bills using [her] checkbook[,]" and she did not want that to happen again.

The victim said her intention was to get her purse away from the man "until he leaned over like he was getting something or getting ready to do something to me."  Then the victim let her purse go and screamed that someone was robbing her.  The police arrived approximately five minutes after her purse was stolen, and she gave the responding officers information about the incident.  She described the robber's vehicle as a rusty blue car that had an open bed in the back.  She also said that the man that stole her purse was "not much taller than [her].  Short and dark.  Short hair cut, dark."  The victim said that she was unable to identify the man that stole her purse in a photo spread.

The victim later spoke to Sergeant Stark with the Memphis Police Department about the incident.  She recalled telling Sergeant Stark that the person that robbed her was about a foot taller than her.  She said that items in her purse that were taken included rings, checkbooks, a cell phone, and her son's death certificate.

Officer Louie Tukes of the Memphis Police Department testified that on October 20, 2006, he and his partner heard a broadcast that a "male black wearing a dark red shirt and driving . . . a 1980's model Chevrolet . . . truck" had robbed a victim at the gas station on Holmes Road and Third Street.  Both officers responded to the broadcast and checked the surrounding area for the suspect while another officer met with the victim at the gas station.  A short time later, Officer Tukes discovered a vehicle matching the description from the broadcast:

> We located a vehicle matching the description at Horn Lake from Holmes Road and Horn Lake at the BP.  And there was a blue – light blue Chevy that matched the description put out.  It was a truck.  And there was also a male

black with a dark red shirt at the time occupying the truck.  I believe he was putting [gas in] the truck at the gas station.

He ran the vehicle's license tag number through dispatch and kept an eye on the man beside the truck.  Upon seeing Officer Tukes, the man ran northbound from the gas station.  Officer Tukes immediately got on his radio and advised that the suspect was running and gave the direction that he was running so that other officers in the area could try to find him.  He said that the man that ran away from blue truck was not apprehended that night.

Following the suspect's escape, Officer Tukes and the other officer looked inside the suspect's truck and found a cell phone and checkbooks in the truck.  Officer Tukes talked to the officer that was with the victim, and that officer verified that the cell phone and checkbooks belonged to the victim.  Officer Tukes tagged the items recovered from the truck and took them to the Property and Evidence room at 201 Poplar where they were held until the investigation was completed.   He said that he was not able to get a good look at the man that ran from the truck.  Officer Tukes said that the BP station where the suspect escaped was located approximately two miles from the gas station where the robbery took place.

Sergeant Joe Stark of the Memphis Police Department testified that he was assigned to work on the October 20, 2006 robbery involving Hailey.  Sergeant Stark asked the victim to provide a statement regarding the incident, and he returned her cell phone to her after verifying that it was the one that was taken in the robbery.  Sergeant Stark talked to Hailey on December 20, 2006.  After being placed in an interview room, Hailey signed an Advice of Rights form that was witnessed by Sergeant Stark.

Sergeant Stark said that Hailey was more than willing to talk about what happened, but he refused to sign a statement.  Hailey admitted that he was at the gas station at Holmes and Third and "admitted to doing the robbery or taking the lady's purse." When Sergeant Stark asked Hailey if he was driving a white truck that day, Hailey corrected him and said that he was driving a white and blue truck.  Hailey told Sergeant Stark that "he'd gotten back on crack cocaine and he needed money for that and for gas in the truck." Sergeant Stark then restated what Hailey had told him about the incident:

> He told me that after he got [the] purse the lady followed him around the truck and was yelling at him to g[i]ve the purse back.  And according to him she used some rather descriptive language while she was doing that.  And he said he got in the truck and after he got in the truck and he thought a minute, he said I really – I really wanted to throw the purse back out at her because he said I really – I felt bad about what I did.  And that was, you know, he was like he was somebody reaching out wanting help because he knew he

had a drug problem, a crack problem. And that was kind of the – that was kind of the talk between us as, you know, I know I need help[.]

Hailey then told Sergeant Stark that he threw the purse out the window of his truck somewhere on Hewlett Street, but he could not identify the precise location. Hailey also claimed that there was "no fight" between him and the victim regarding the purse. Sergeant Stark identified Hailey as the person who gave the admission regarding stealing the victim's purse on October 20, 2006.

Sergeant Stark said Hailey told him that he found approximately $40 or $50 in the victim's purse. However, Hailey failed to mention finding a cell phone or jewelry or anything else in the purse. He confirmed that the white and blue truck that Hailey was driving at the time of the robbery was found shortly thereafter because the victim provided the license tag number to the police.

Hailey did not testify and did not present any proof at trial.

**Sentencing Hearing.** At the March 13, 2009 sentencing hearing, the State informed the court that it had certified copies of Hailey's four prior felony convictions, which included a petit larceny conviction, two robbery convictions, and a rape conviction. These certified judgments were admitted into evidence without objection by the defense. The presentence report was also admitted into evidence. The State argued that Hailey was a Range II offender.

Hailey testified that he understood that the trial court would sentence him as a Range II offender, which meant that he would receive a sentence of between six and ten years. He said that he finished the eleventh grade but did not complete his GED. He admitted pleading guilty to three felonies in 1988. He said that once he was released from jail, he began working at Bill Coleman Construction. Although his employment was unable to be verified for the presentence report, Hailey claimed that he had received paychecks from the construction company until he had to quit that job in 2007 because he did not have transportation to and from work. Hailey said he had used alcohol socially and used crack cocaine the past, which was documented in the presentence report. He also stated that the last time he had used crack cocaine was in 2007. Hailey claimed that if the court were to grant him a sentence of probation in this case, he would live with his sister in Memphis. He said that he could "stay out of trouble [if he was] living with her." He also claimed that he could have his job back as a pipe layer for Bill Coleman Construction. Hailey acknowledged that the State had discovered he had received probation in a previous case, but said that he did not recall being placed on probation. He also admitted that he received a misdemeanor conviction for unlawful drug paraphernalia in general sessions after he was released from jail in 2002.

-4-

During cross-examination, Hailey acknowledged that the last time he smoked crack cocaine was when he was released on bond in this case in 2007. He admitted that he did not seek any drug treatment at the time that he was released in this case. He said that he began using crack cocaine again in 2006, after he had been clean for several years. Hailey said that he wanted to live with his sister, even though he was living with her when he was arrested in the instant case, because "she didn't have nothing [sic] to do with [his] drug problem."

On re-direct examination, Hailey stated that he was in Special Education classes in school. He also said that he had medical insurance with his job at Coleman Construction but did not ever ask if the insurance would pay for drug rehabilitation. He asserted that he worked forty hours a week at his construction job.

At the close of proof, the State argued that Hailey was a Range II offender and should receive a sentence of between six and ten years for his robbery conviction. It argued that enhancement factor (1) applied because Hailey had "a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range[.]" T.C.A. § 40-35-114(1) (2006). It reiterated that only two felony convictions were necessary to establish a defendant as a Range II offender and that Hailey had four prior convictions. The State argued that even though three of these convictions occurred on the same day, all three convictions were for violent offenses. In addition, the State argued that Hailey had three misdemeanor convictions for unlawful possession of paraphernalia, criminal trespass, and malicious mischief. The State contended that enhancement factor number (8) applied because Hailey had "failed to comply with the conditions of a sentence involving release into the community" because he had violated his probation in an earlier case. Id. § 40-35-114(8) (2006). The State further argued that enhancement factor (10) applied because Hailey "had no hesitation about committing a crime when the risk to human life was high." Id. § 40-35-114(10) (2006). In support of this enhancement factor, the State asserted that the circumstances of this offense were violent, that Hailey could have injured the victim or other individuals during the incident, and that Hailey fled from the police following the crime. The State requested that Hailey be given the maximum sentence to be served in confinement because "when . . . he was released on this case . . . he went back . . . to the same life-style [of drug use] that he was [living] before." Defense counsel argued that enhancement factor (8) was not applicable because Hailey did not remember being placed on probation and because she had not seen any documentation supporting the statement in his presentence report that he violated his probation. She also argued that enhancement factor (10) did not apply because the risk to human life was inherent to the offense of robbery. The trial court agreed that enhancement factor (10) was not applicable in this case.

After hearing arguments from the State and defense, the trial court made the following ruling:

Well, I find he's a Range [II] Offender. The petit larceny and the first robbery make him a Range II candidate. I find as an enhancement factor his other robbery and rape conviction. I also note that it wasn't seven years that he [served] because these [sentences] were run consecutively. So his testimony was he did 15 years and was [paroled] out. So he did a large amount of time in prison. But I give [these convictions] just a whole lot of weight because . . . this robbery and rape [are] violent convictions and [the] conviction [at issue in this case is] one involving violence of the person.

I don't find any mitigating . . . circumstances. As a Range II Robbery Offender, he's looking at six to 10 years. As far as the Second Enhancement Factor, I do find that he violated his probation according to the Presentence Report on his petit larceny conviction and served nine months on a violation of probation. I don't give that a whole lot of weight because it happened so long ago. And I note that he violated that probation most likely because he was arrested for the robberies and rape while he was on probation. Can't really show that but it's all probably part and parcel of the same thing.

Under the circumstances of this case, with that enhancement factor, with both of them but the first one having so much great weight, I'm going to show him sentenced to nine and a half years in the Tennessee Department of Correction.

Looking at the probation considerations, he's eligible for probation because the sentence is 10 years or less. The Presentence report, his social history and his mental and his physical condition are bad, in that, he's a drug addict apparently out of control. The facts and circumstances surrounding this offense aren't particularly aggravated other than being purse snatch which is implicit in the robbery charge and its punishment by the Legislature. He has a horrible prior criminal history of violence. His previous actions and character have not been good.

I don't find that he would be reasonably expected to be rehabilitated. I don't think he can get an education because of this Special Education done in the penitentiary. I don't think he's ever going to be able to get a good job and keep it and stay off drugs without any treatment. I don't find that he would abide by the terms of the probation, and I think that in the interest of society and being protected from possible future criminal conduct [by] him are great. That we have tried probation and that we have tried everything else, even [having him serve] 15 years in the penitentiary.

So, for that reason I'm going to deny him any probation.

Following the sentencing hearing, Hailey filed a motion for new trial on April 9, 2009, which was denied by written order of the trial court on the same day. Hailey then filed a timely notice of appeal.

## ANALYSIS

**I. Sufficiency of the Evidence.** Hailey argues the evidence is insufficient to support his conviction for robbery. He specifically claims that the evidence presented at trial failed to show that the victim was put in fear by his actions. In response, the State contends that the proof showed that the victim let go of her purse during the struggle with Hailey after she became scared that Hailey would hurt her. We agree with the State.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, this Court must consider "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." Guilt may be found beyond a reasonable doubt through direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977) and Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and must reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). When reviewing issues regarding the sufficiency of the evidence, this Court shall not "reweigh or reevaluate the evidence." State v. Philpott, 882 S.W.2d 394, 398 (Tenn. Crim. App. 1994) (citing State v. Cabbage, 571 S.W.2d 832, 836 (Tenn. 1978), superseded by statute on other grounds as stated in State v. Barone, 852 S.W.2d 216, 218 (Tenn. 1993)). This Court has often stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659 (citation omitted). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)).

Hailey argues that the evidence presented at trial was insufficient to convict him of the offense of robbery. Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a)

(2006). The Tennessee Supreme Court defined violence and fear for the purposes of the robbery statute:

> [I]t is the use of "violence" or "fear" that elevates a theft to robbery. Violence is defined as "physical force unlawfully exercised so as to injure, damage or abuse." [State v.]Fitz, 19 S.W.3d [213,] 217 [Tenn. 2000]. "The fear constituting an element of [robbery] is fear of present personal peril from violence offered or impending." Britt v. State, 26 Tenn. (7 Hum.) 45 ([Tenn.] 1846). It must be a fear of "bodily danger or impending peril to the person," id., which intimidates and promotes submission to the theft of the property.

State v. Bowles, 52 S.W.3d 69, 80 (Tenn. 2001). "[T]he use of violence or fear must precede or be contemporaneous with the taking of property from the person to constitute the offense of robbery under Tenn. Code Ann. § 39-13-401." State v. Owens, 20 S.W.3d 634, 641 (Tenn. 2000).

The indictment in this case stated that Hailey "did unlawfully, intentionally or knowingly, take from the person of [the victim] certain property, to wit: a purse and contents, of value, by violence or by putting [the victim] in fear, in violation of T.C.A. 39-13-401[.]" Upon review, the evidence presented at trial established that Hailey took Holmes' purse through the use of both violence and fear.

The evidence presented at trial supports Hailey's conviction under the "fear" element of robbery. This element has been broadly interpreted:

> The fear of bodily injury sufficient to support a charge of robbery may be aroused by a word, or gesture . . . . Even a slight cause of fear or indirect language of a threatening character may be sufficient to constitute intimidation, and the victim may be deemed to have been put in fear if the transaction is attended with such circumstances of terror as in common experience are likely to create an apprehension of danger and induce a man to part with his property for the sake of his person.

Sloan v. State, 491 S.W.2d 858, 861 (Tenn. Crim. App. 1972) (quoting 77 C.J.S. Robbery § 16). Here, the victim testified that Hailey "jerked" and dragged her backwards as he stole her purse. The victim said that she intended to hold on to her purse until Hailey "leaned over like he was getting something or getting ready to do something to [her]." The victim's testimony at trial established the fact that she felt she was in "present personal peril" from Hailey's actions during this incident. See Bowles, 52 S.W.3d at 80 (quoting Britt, 26 Tenn. 45, 46 (Tenn. 1846)). In addition, the victim's fear during this incident was "contemporaneous" with the taking of her purse. See Owens, 20 S.W.3d at 641. Morever, the evidence at trial showed that Hailey's actions "creat[ed] an apprehension of danger"

which induced the victim to "part with [her] property for the sake of [her] person." See Sloan, 491 S.W.2d at 861 (quoting 77 C.J.S. Robbery § 16).

The evidence also supports Hailey's conviction under the "violence" element of robbery. As noted by the State, there is no requirement that the victim suffer physical injury in order to establish the "violence" element. See Fitz, 19 S.W.3d at 217 (concluding that the defendant was guilty of robbery through the use of violence where he pushed a store clerk in an "aggressive manner," and the clerk was "stunned and afraid" but unhurt). Here, Hailey's act of "jerk[ing]" and dragging the victim backwards constituted "physical force unlawfully exercised so as to injure, damage or abuse" the victim in this case. See Bowles, 52 S.W.3d at 80 (quoting Fitz, 19 S.W.3d at 217). This violence either "preced[ed]" or was "contemporaneous" with the taking of the victim's purse. See Owens, 20 S.W.3d at 641. Finally, as argued by the State, the circumstances in this case cannot be likened to a theft case where the defendant "grab[s] the moneybag from an [i]nattentive victim." State v. Witherspoon, 648 S.W.2d 279, 281 ( Tenn. Crim. App. 1983). The evidence at trial showed that Hailey employed physical violence in order to steal the victim's purse in this case.

Viewed in the light most favorable to the State, the proof supports Hailey's conviction for robbery. As previously stated, it is not the function of this court to re-weigh or re-evaluate the proof presented at trial. See Philpott, 882 S.W.2d at 398. We conclude, upon our review of the record, that a rational jury could have found that Hailey was guilty of robbery under both the "fear" and "violence" prongs for robbery. See Fitz, 19 S.W.3d at 215 (concluding that "in many robbery cases the evidence will satisfy both prongs"). Accordingly, Hailey is not entitled to relief on this issue.

**II.** **Sentence.** Hailey contends that his sentence is excessive. Although he acknowledges that he is a Range II, multiple offender, he argues that the trial court improperly used his conviction for rape to enhance his sentence within the range since the rape offense occurred within twenty-four hours of the robbery offense. Specifically, he claims that because his prior convictions for rape and two robberies occurred on the same day and because the offense of rape does not include the statutory elements of bodily injury or threatened bodily injury, the 24-hour merger rule exception should require that the rape and robbery convictions be considered one offense for the purposes of enhancement factor (1). See T.C.A. § 40-35-114(1) (2006). In response, the State argues that the trial court properly enhanced Hailey's sentence based on his convictions for rape and robbery. We agree with the State.

Before analyzing this issue on its merits, we must determine which sentencing law is applicable to this case. Tennessee's amended sentencing act became effective June 7, 2005. Because the robbery offense in this case occurred on October 20, 2006, the amended sentencing act governs this case. Under the 2005 amended sentencing act, "the trial court

'shall consider, but is not bound by' an 'advisory sentencing guideline' that suggests an adjustment to the defendant's sentence upon the presence or absence of mitigating and enhancement factors." State v. Carter, 254 S.W.3d 335, 344 (Tenn. 2008) (quoting T.C.A. § 40-35-210(c) (2006)). Moreover, under the new law "[a]n appellate court is . . . bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 346. The Tennessee Supreme Court explained the impact of the 2005 amended sentencing act:

> The amended statute no longer imposes a presumptive sentence. Rather, the trial court is free to select any sentence within the applicable range so long as the length of the sentence is "consistent with the purposes and principles of [the Sentencing Act]." Id. § 40-35-210(d). Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," id. § 40-35-102(1), a punishment sufficient "to prevent crime and promote respect for the law," id. § 40-35-102(3), and consideration of a defendant's "potential or lack of potential for . . . rehabilitation," id. § 40-35-103(5).

Id. at 343 (internal footnote omitted). The court also emphasized the broad discretion the trial court has in sentencing a defendant under this act:

> [A] trial court's weighing of various mitigating and enhancement factors has been left to the trial court's sound discretion. Since the Sentencing Act has been revised to render these factors merely advisory, that discretion has been broadened. Thus, even if a trial court recognizes and enunciates several applicable enhancement factors, it does not abuse its discretion if it does not increase the sentence beyond the minimum on the basis of those factors. Similarly, if the trial court recognizes and enunciates several applicable mitigating factors, it does not abuse its discretion if it does not reduce the sentence from the maximum on the basis of those factors. The appellate courts are therefore left with a narrower set of circumstances in which they might find that a trial court has abused its discretion in setting the length of a defendant's sentence.

Id. at 345-46.

On appeal, we must review issues regarding the length and manner of service of a sentence de novo with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (1997). Nevertheless, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial

court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). This means that if the trial court followed the statutory sentencing procedure, made adequate findings of fact that are supported by the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, this court may not disturb the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In a case where "the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails." Carter, 254 S.W.3d at 345 (citing State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). Because the record shows that the trial court followed the purposes and principles of the amended sentencing act and applied the proper enhancement and/or mitigating factors, we must presume that the trial court's decision regarding sentencing is correct. See id.; see also Ashby, 823 S.W.2d at 169.

A trial court, when sentencing a defendant, must consider the following:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b) (Supp. 2001); State v. Williams, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

Hailey was sentenced as Range II, multiple offender, a fact that Hailey does not dispute. For robbery, a Class C felony, the sentencing range for a Range II offender is six to ten years. T.C.A. §§ 39-13-401(b), 40-35-112(b)(3) (2006). At the time of sentencing, Hailey had previously been convicted of the following four felonies:

| Offense | Class | Date of Offense | Case Number | Sentence |
| --- | --- | --- | --- | --- |

-11-

| | | | | |
|---|---|---|---|---|
| Petit Larceny | E felony | 4/15/87 | No. 87-06765 | 1 year |
| Robbery | C felony | 12/4/87 | No. 88-01453 | 7 years, consecutive to 87-03765 |
| Robbery | C felony | 12/4/87 | No. 88-01454 | 10 years, consecutive to 88-01453 |
| Rape | B felony | 12/4/87 | No. 88-01455 | 12 years, concurrent with 88-01454 |

Here, the trial court determined that Hailey was a Range II, multiple offender based on his prior convictions for petit larceny, a Class E felony, and robbery, a Class C felony, in No. 88-01453. Our law defines a "multiple offender" as a defendant who has received:

(1) A minimum of two (2) but not more than four (4) prior felony convictions within the conviction class, a higher class, or within the next two (2) lower felony classes, where applicable; or

(2) One (1) Class A prior felony conviction if the defendant's conviction offense is a Class A or B felony.

Id. § 40-35-106(a) (2006).

The trial court determined that no mitigating factors applied in this case. The court then applied two enhancement factors:

(1) The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range;

. . . .

(8) The defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community[.]

Id. §§ 40-35-114(1), (8) (2006).

In applying enhancement factor (1), the court used the second robbery conviction in No. 88-01454 and the rape conviction to enhance Hailey's sentence. See id. § 40-35-114(1) (2006). The trial court noted that it gave the robbery and rape convictions "a whole lot of weight" because they were "violent convictions[,]" and the offense for which Hailey was being sentenced in the instant case involved "violence of the person." In applying enhancement factor (8), the court found that Hailey had "violated his probation according to the Presentence Report on his petit larceny conviction and served nine months on a violation of probation." See id. § 40-35-114(8) (2006). The court said, "I don't give that a whole lot of weight because it happened so long ago." Following the application of these two factors, the trial court sentenced him to nine years and six months in the Tennessee Department of Correction.

The defendant has the burden of showing the impropriety of the sentence. T.C.A. § 40-35-401(d) (2006), Sentencing Comm'n Comments. Hailey argues that the second robbery conviction in No. 88-01454 and the rape conviction in No. 88-01455 should be considered a single conviction under enhancement factor (1) based on the "24-hour merger rule exception." He contends that the court's failure to apply this merger rule resulted in an excessive sentence. This "24-hour merger rule exception," found in the multiple offender code section, states:

> (b) In determining the number of prior convictions a defendant has received:
>
> . . . .
>
> (4) Except for convictions for which the statutory elements include serious bodily injury, bodily injury, threatened serious bodily injury, or threatened bodily injury to the victim or victims, or convictions for the offense of aggravated burglary under § 39-14-403, convictions for multiple felonies committed within the same twenty-four-hour period constitute one (1) conviction for the purpose of determining prior convictions[.]

Id. § 40-35-106(b)(4) (2006).

First, as the State correctly notes, the "24-hour merger rule exception" applies only to the use of prior convictions to determine a defendant's range, not to determine the application of enhancement factor (1). Lending support to this view are the Sentencing Commission Comments for section 40-35-106, which clearly state that "[s]ubsection (b) sets forth the factors which must be considered in ascertaining the nature and type of prior felony convictions necessary to impose a Range II sentence." Id. § 40-35-106, Sentencing Comm'n Comments. Accordingly, section 40-35-106(b)(4), otherwise known as the "24-hour merger

rule exception," applies only to a trial court's determination of a defendant's range. Therefore, the trial court properly considered the robbery conviction in No. 88-01454 and the rape conviction in No. 88-01455 as two separate convictions under enhancement factor (1). See id. § 40-35-114(1) (2006).

Moreover, Hailey's argument fails to take into account the fact that the court applied both enhancement factors (1) and (8) to enhance his sentence. See id. §§ 40-35-114(1), (8) (2006). Although the court determined that factor (1) was more serious, it applied both in determining the length of Hailey's sentence. Furthermore, we note that the presentence report showed that Hailey had three misdemeanor convictions for unlawful possession of paraphernalia, criminal trespass, and malicious mischief that could also be used to apply enhancement factor (1). Finally, Hailey admitted in the presentence report and at the presentence hearing that he had a history of drug addiction. This evidence also supports the court's application of enhancement factor (1). Upon review, the record supports the trial court's application of enhancement factors (1) and (8) in this case.

Only two of Hailey's four prior felony convictions are necessary to qualify him as a Range II, multiple offender. The trial court used Hailey's prior convictions for petit larceny and robbery. Therefore, Hailey's prior criminal history consisting of the robbery and rape convictions is sufficient to enhance his sentence to the maximum within the range under enhancement factor (1). See id. § 40-35-114(1) (2006). This enhancement factor, alone, can be used to enhance a sentence to the maximum and "firmly embed" it in the ceiling. State v. Samuel D. Braden, No. 01C01-9610-CC-00457, 1998 WL 85285, at *7 (Tenn. Crim. App., at Nashville, Feb. 18, 1998); State v. James Taylor, Jr., No. W2006-02085-CCA-R3-CD, 2007 WL 3391433, at *6 (Tenn. Crim. App., at Jackson, Nov. 14, 2007); State v. Barry Singleton, No. W2006-02476-CCA-R3-CD, 2009 WL 1161782, at *7 (Tenn. Crim. App., at Jackson, Apr. 29, 2009). Accordingly, Hailey's sentence of nine years and six months is not excessive. Hailey is not entitled to relief on this issue.

## CONCLUSION

We conclude that the evidence is sufficient to support Hailey's conviction for robbery and that the sentence imposed by the trial court is not excessive. Accordingly, the judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE

-14-